Bergstrom v. UNH                          CV-95-267-JD  06/21/96  P
                    UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE

Carol Ann Bergstrom

        v.                                   Civil No. 95-267-JD

University of N.H., et al.


                              O R D E R


        The plaintiff, Carol Ann Bergstrom, has filed this

employment discrimination action against her former employers,

defendants University of New Hampshire and the University System

of New Hampshire (collectively "UNH"), and against a former

supervisor, defendant Roger Beaudoin.  The plaintiff asserts

violations of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e et seq., the Fair Labor Standards Act ("FSLA"), 29

U.S.C. § 201 et seq., and the New Hampshire equal pay act, N.H.

Rev. Stat. Ann. ("RSA") § 275:36 et seq.  Before the court is the

defendants' motion for summary judgment (document no. 17).


                            Background[1]

        The plaintiff has been employed in various professional,

administrative, and technical ("PAT") capacities at UNH since

_____

        [1]The factual background of this case is drawn in large part
from the court's ruling on the defendants' earlier motion to
dismiss, see Bergstrom v. UNH, No. 95-267-JD, slip op. at 2-3
(D.N.H. Jan. 9, 1996), and is recited in a light most favorable
to the plaintiff, see Fed. R. Civ. P. 56.

August 6, 1979.[2]  During her years at the university she has been subjected to a variety of adverse employment actions because of her gender, including intentional acts of sex discrimination. The most recent discriminatory act is alleged to have occurred on April 9, 1993, when UNH "informed Bergstrom that no action would be taken to remedy the discriminatory treatment by Beaudoin and [Steve] Larson," another UNH supervisor.  Complaint at ¶ 37.

For several years the plaintiff attempted to resolve these employment concerns through direct negotiation with the university.  She first notified senior management, including the office of the university president, of the discriminatory conduct in 1988.  Since that time, UNH administrators have made verbal and written assurances to the plaintiff that the situation would be reviewed and remedied if the plaintiff were to forego legal action.  Although the plaintiff was transferred to another department with the understanding that she would assume the title and responsibilities of an associate director, such a promotion "never materialized" and "from 1988 through 1993, administrators and officials at the University failed to meet their repeated promises that they would remedy the discrimination plaintiff suffered."  On January 31, 1994, 297 days after the last incident

_____

[2]The court cannot determine from the record whether the plaintiff remains employed by UNH.

2

of discrimination, the plaintiff filed a formal charge of discrimination with the New Hampshire Human Rights Commission ("NHHRC"), which also served as a timely filing with the Equal Employment Opportunity Commission ("EEOC").

The court incorporates other facts, infra, as necessary for its analysis of the legal issues presented by the instant motion.

## Discussion

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 113 S. Ct. 1845 (1993)), cert. denied, 115 S. Ct. 56 (1994). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v.

3

Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the plaintiff, "`indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)), cert. denied, 504 U.S. 985 (1992). However, once the defendant has submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of [her] pleading but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

## I.   Count II Is Not Barred

In their motion the defendants assert that count II, a Title VII sexual harassment claim, is barred because the alleged misconduct underlying the claim occurred outside the Title VII limitations period. See Defendants' Memorandum of Law in Support of Motion for Summary Judgment ("Defendants' Memorandum") at 2-3.[3] The defendants reason that because the plaintiff "does not

---

[3]The plaintiff also has alleged violations of the state human rights act, RSA § 354-A:7, V. Although the parties have not addressed the issue, the claim is barred because the statute does not provide a private right of action. See Tsetseranos v. Tech Prototype, Inc., 893 F. Supp. 109, 119-20 (D.N.H. 1995).

4

contend that anyone other than Beaudoin sexually harassed her or that the alleged sexual harassment continued after April, 1988," the alleged harassment cannot be actionable unless it bears a "substantial relationship" to an act of harassment that did occur within the limitations period. Id. at 1-2.

The plaintiff responds that each of her allegations is actionable as part of a continuing violation that also encompassed conduct occurring within the limitations period. See Plaintiff's Memorandum of Law in Opposition to Summary Judgment ("Plaintiff's Memorandum") at 6-8. In the alternative, the plaintiff urges that the limitations period "should be equitably tolled because the University mislead [her] into refraining from legal action by repeatedly promising to provide her with a remedy." Id. at 8.

To maintain a Title VII action a plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), or its designee, within a specified time period. See Bergstrom v. University of New Hampshire, No. 95-267-JD, slip op. at 5-8 (D.N.H. Jan. 9, 1996) (citing 42 U.S.C. §

---

Accordingly, the court dismisses sua sponte the plaintiff's state law claims under RSA § 354-A:7, V as set forth in counts one and two.

5

2000e-5(e)(1) and other authority).[4]  However, the First Circuit permits Title VII litigants to "reach back and recover for a series of acts outside the limitations period" under either of two continuing violation theories, the serial violation theory and the systemic violation theory.  Lawton v. State Mutual Life Ass. Co. of America, 924 F. Supp. 331, ___, 1996 WL 252246 at * 5 (D. Mass. May 10, 1996) (citing Sabree v. United Brotherhood of Carpenters and Joiners, 921 F.2d 396, 400-01 (1st Cir. 1990)); accord Douglas v. Coca-Cola Bottling Co., No. 94-97-M, slip op. at 9-10 (D.N.H. Nov. 6, 1995).[5]

A serial "violation is composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate actionable wrong under Title VII."  Sabree, 921 F.2d at 400 (quoting Jensen v. Frank, 912 F.2d 517, 522 (1st Cir. 1990)).  To proceed under this theory, the plaintiff must show a "substantial relationship"

---

[4]By prior order the court found that the plaintiff's January 31, 1994, filing of a formal charge with the NHHRC satisfied the applicable time limit for purposes of maintaining her Title VII claim.  See Bergstrom, slip op. at 10 (D.N.H. Jan. 9, 1996). However, the order did not address the instant question of whether conduct occurring outside the time limit, such as that alleged to have taken place prior to April 1993, would be actionable under the claim.

[5]The plaintiff does not appear to have alleged a systemic violation and, as such, the court does not address this continuing violation theory.

between the time-barred acts and at least one act of harassment that occurred within the limitations period. E.g., Sabree, 921 F.2d at 401 (citing Berry v. Board of Supervisors of LSU, 715 F.2d 971, 981 (5th Cir. 1983), cert. denied, 479 U.S. 868 (1986)); Lawton, 1996 WL 252246 at * 5; Douglas, slip op. at 9-10. The most important factor to consider when assessing the substantiality of the relationship between the timely and untimely conduct is whether "the act outside the limitations period `has the degree of permanence which should trigger an employee's awareness and duty to assert her rights.'" Lawton, 1996 WL 252246 at * 5 (quoting Desrosiers v. Great Atlantic & Pacific Tea Company, 885 F. Supp. 308, 312 (D. Mass. 1995)); see Jensen, 912 F.2d at 522 ("What matters is whether, when and to what extent the plaintiff was on inquiry notice"); Douglas, slip op. at 9-10 (permanence found where plaintiff "unable to appreciate that [she was] being discriminated against until [she had] lived through a series of acts" (quoting Sabree, 921 F.2d at 402)). Thus, courts in this circuit have rejected a serial violation theory where the plaintiff "admitted that he believed, at every turn, that he was discriminated against," Sabree, 921 F.2d at 402, and where the plaintiff "faile[ed] to offer any evidence that [the timely and untimely] actions were motivated by

7

the same discriminatory animus or were related in any way,"
Lawton, 1996 WL 252246 at * 6.

The court finds that the plaintiff has alleged acts and adduced ample evidence to support her theory of a serial violation. The complaint, liberally construed in accordance with Rules 8(a) & (e), alleges an ongoing pattern of harassment which began several years prior to the statutory time limit but did not terminate until a date within the time period, i.e., April 9, 1993. The pattern alleged not only involves individual acts of direct harassment, such as those attributed to Beaudoin, e.g. Complaint at ¶¶ 22-31, but also encompasses less explicit conduct, such as that involving other members of university management, e.g. id. at ¶¶ 32-37, 58. For example, the university's failure to remedy the plaintiff's complaints of Beaudoin's harassment notwithstanding specific requests to do so arguably constitutes a purposeful extension, ratification, or amplification of the unlawful conduct. Moreover, the plaintiff's requests for assistance from others within the university administration and, in turn, their false assurances that the situation would be remedied, supports the inference that the plaintiff herself did not recognize the full nature and extent of the pattern of harassment until the pattern concluded in April 1993.

8

Finally, each incident of unlawful conduct arguably emanated from the same discriminatory animus in that each involved job-related harassment initiated by the plaintiff's superiors or others in positions of authority, each allegedly precipitated the next, and each remained unremedied despite repeated assurances to the contrary. See, e.g., Plaintiff's Memorandum, Exs. B & E (narrative description of various meetings, some with direct reference to Beaudoin-related harassment). The final act of discrimination, the April 9, 1993, notification that there would be no action taken to remedy Beaudoin's and Larson's unlawful conduct, is consistent with this pattern.

Accordingly, the plaintiff's evidence and allegations, graced with all favorable inferences under Rule 56, give rise to a genuine dispute on the material question of whether the untimely acts relate substantially to the timely acts. Therefore, the plaintiff may proceed under a serial violation theory.

## II.  Individual Liability under The EPA

Defendant Beaudoin asserts that he cannot be liable under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), claim asserted in count three because the plaintiff has not alleged and cannot establish that he possessed authority or control over her

9

compensation level.  See Defendants' Memorandum at 3.  Beaudoin also asserts that recent decisions barring Title VII liability for individual supervisors should apply with equal force to the EPA.  See id. (citing Pommier v. James L. Edelstein Enterprises, 816 F. Supp. 476 (N.D. Ill. 1993)).  The plaintiff responds that discovery has revealed a dispute of fact concerning Beaudoin's status as an employer and that the Title VII proscription on individual liability is inapplicable to claims filed under the EPA.

The Fair Labor Standards Act ("FLSA"), of which the EPA is part, defines an "employer" as including:

> any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C.A. § 203(d) (1978).  The term is broadly construed to serve the act's remedial aims, see Bergstrom, slip op. 11 (citing Donovan v. Agnew, 712 F.2d 1509, 1510 (1st Cir. 1983); McMaster v. State of Minnesota, 819 F. Supp. 1429, 1435 (D. Minn. 1993) (citing Nationwide Mut. Ins. Co. v. Darden, 112 S. Ct. 1344, 1350 (1992)), aff'd, 30 F.3d 976 (8th Cir. 1994), cert. denied, 115 S. Ct. 1116 (1995)), and the statute contemplates that "[t]here may be several simultaneous employers," Donovan, 712 F.2d at 1510 (citing Falk v. Brennan, 414 U.S. 190, 195 (1973)); see also

10

Bureerong v. Uvawas, 922 F. Supp. 1450, 1467 (C.D. Cal. 1996) (noting "striking breadth" of FLSA definition of "employee").

The First Circuit has rejected a rigid definition of the term "employer" for purposes of EPA liability in favor of a fact-specific analysis of the "economic reality" of the purported employer's status within the workplace. See Donovan, 712 F.2d at 1510; Blake v. CMB Construction, No. 90-388-M, slip op. at 19 (D.N.H. March 30, 1993) (citing Goldberg v. Whitaker House Co-op, 366 U.S. 28, 33 (1961); Donovan, 712 F.2d at 1513-14); see also Secretary of Labor v. DeSisto, 929 F.2d 789, 797 (1st Cir. 1991) (citing with approval but without comment Donovan v. Agnew standard for employer liability). Under the economic reality approach, courts examine, inter alia, the purported employer's job description, financial interest in the workplace, involvement in decisions affecting the plaintiff's employment terms, conditions and compensation, and relative operational control in the workplace. See United States Dept. of Labor v. Cole Enterprises, 62 F.3d 775, 778-79 (6th Cir. 1995); Donovan, 712 F.2d at 1510-11; Blake, slip op. at 18-20; Debrecini v. Graf Bros. Leasing, Inc., No. 85-3386-MA, 1987 WL 6983 at * 3-4 (D. Mass. Jan. 23, 1987), aff'd, 828 F.2d 877 (1st Cir. 1987), cert. denied, 484 U.S. 1064 (1988). Although a defendant's shareholder status and operational control of the institutional defendant

11

frequently are key indicia of employer status, <u>see</u>, <u>e.g.</u>, <u>Cole Enterprises</u>, 62 F.3d at 778-79, "[p]ersonal liability has been found even against a corporate officer who lacks an ownership interest in the corporation or who has minimal ownership interest," <u>Donovan</u>, 712 F.2d at 1511 (citing <u>Donovan v. Sabine Irrigation Co.</u>, 695 F.2d 190, 194-95 (5th Cir. 1983), <u>cert. denied</u>, 463 U.S. 1207 (1983); <u>Usery v. Weiner Bros., Inc.</u>, 70 F.R.D. 615, 617 (D. Conn. 1976)).

Title VII, a civil rights scheme which proscribes many of the same discriminatory employment practices outlawed by the EPA, also limits liability to "employers" but defines that term in somewhat different language:

> The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . .

42 U.S.C. § 2000e(b). In recent years, courts sitting in this district and, to a lesser extent, those sitting in other First Circuit districts, have joined the majority of circuits by ruling that supervisors may not be individually liable as employers under this definition. <u>See</u>, <u>e.g.</u>, <u>Attardo v. Sullivan & Gregg, P.A.</u>, No. 94-189-JD, slip op. at 1-2 (D.N.H. Jan. 9, 1996); <u>Bartholomew v. Delahaye Group, Inc.</u>, No. 95-20-B, slip op. at 13-15 (D.N.H. Nov. 8, 1995) (compiling authority); <u>Hernandez v.</u>

12

Medina Velez, No. 92-2701-JAF, 1994 WL 394855 at * 5-7 (D.P.R. July 20, 1994); see also Miller v. CBC Companies, Inc., 908 F. Supp. 1054, 1065 (D.N.H. 1995) (recognizing Title VII ban on individual liability in context of claim under Americans with Disabilities Act ("ADA")). But see, e.g., Iacampo v. Hasbro, Inc., ___ F. Supp. ___, 1996 WL 308962 at * 5-7 (D.R.I. June 6, 1996) (noting that "issue of individual liability for supervisory employees under Title VII has divided circuit against circuit and court against court"); Lamirande v. Resolution Trust Corp., 834 F. Supp. 526, 527-29 (D.N.H. 1993). These courts have reasoned, inter alia, that Congress included the "any agent" language in the definition of employer merely to "remind[] courts of the doctrine of respondeat superior." Bartholomew, slip op. at 14-15; accord Tomka v. Seiler Corp., 66 F.3d 1295, 1313-16 (2d Cir. 1995) (citing cases). Several courts also have recognized that individual liability under Title VII would be inconsistent with Congress' explicit protection of small employers, see 42 U.S.C. § 2000e(b) (liability limited to employers with at least fifteen employees), and the fact that Congress "calibrated the maximum allowable damage award to the size of the employer" yet did not address the nature and extent of individual liability. Tomka, 66 F.3d at 1314-15 (citing Miller v. Maxwell Int'l Inc., 991 F.2d 583, 587, 588 n.2 (9th Cir. 1993), cert. denied, 114 S. Ct. 1049

13

(1994)). Finally, courts have employed the recent Title VII decisions to bar individual liability in cases under the Americans with Disabilities Act ("ADA"), e.g. Miller v. CBC Companies, 908 F. Supp. at 1065; Quiron v. L.N. Violette Co., 897 F. Supp. 18, 18-20 (D. Me. 1995), and under the Age Discrimination in Employment Act ("ADEA"), e.g., Smith v. Lomax, 45 F.3d 402, 403 n.4 (11th Cir. 1995); Griswold v. New Madrid County Group Practice, 920 F. Supp. 1046, 1047-48 (E.D. Mo. 1996); Quiron, 897 F. Supp. at 18-20.

The First Circuit has not addressed the issue of individual supervisor liability under Title VII. However, even assuming that the circuit will in the future recognize the correctness of the Title VII (and the ADA and ADEA) decisions, the court finds that there is at present an inadequate basis upon which to extend the Title VII-inspired proscription on individual liability to cases filed under the EPA and its parent, the FLSA. First, the circuit's prior adoption of the "economic reality" approach for determining whether an individual is an employer under the EPA, e.g., Donovan, 712 F.2d at 1510, necessarily assumes that individual defendants may be liable in the first instance. The proposed elimination of individual liability, however logical, would offend this binding precedent.

Second, Beaudoin's reliance on Pommier v. James L. Edelstein Enterprises, 816 F. Supp. 476 (N.D. Ill. 1993), a case where the district court did interpret Title VII caselaw to bar individual liability under the EPA, is not persuasive. The decision, which was not appealed, is thinly reasoned and is based in part on the erroneous conclusion that the "definition of the term `employer' within the context of the Equal Pay Act is identical to that used within the statutory framework of Title VII." 816 F. Supp. at 481. Moreover, to the court's knowledge the Pommier decison, although more than three years old and published in the Federal Supplement, has not been relied upon by other courts with respect to the EPA individual liability ruling and, in fact, the decision has been considered and rejected by at least one court in the same district. See Whitman v. Regency Savs. Bank F.S.B., No. 95-6343, 1995 WL 72388 at * 1, 1995 WL 680313 at * 1 (N.D. Ill. Dec. 5, 1995, & Nov. 13, 1995) (after ordering plaintiff to brief individual liability issue in light of Pommier, court ruled that individual supervisor liability may attach under the EPA); see also Freemon v. Foley, 911 F. Supp. 326, 330-31 (N.D. Ill. 1995) (rejecting Title VII analogy, court ruled that individual liability may attach under the Family Medical Leave Act ("FMLA") because FMLA definition of employer was identical to that used in FLSA).

15

Third, the EPA and Title VII are distinct statutes which, despite certain common goals, vary in scope, operation, and statutory language. Specifically, the EPA definition of "employer" is somewhat different from that applied in Title VII cases. Compare 29 U.S.C. § 203(d) (EPA liability for "any person acting directly or indirectly in the interest of an employer") with 42 U.S.C. § 2000e(b) (Title VII liability for "any agent of such [an employer]"). Although the two phrases may be viewed as functionally equivalent, it is difficult to dismiss the variation in language as mere semantics given that many of the Title VII individual liability decisions place considerable weight on Congress' word choice, see, e.g., Tomka, 66 F.3d at 1313, and given that courts have extended the Title VII individual liability proscription to ADA and ADEA cases at least in part because each of these statutory schemes -- unlike the EPA -- "define[s] the term "employer" to include any of its "agent[s]," Quiron, 897 F. Supp. 19 (citing ADEA, 29 U.S.C. § 630(b) and ADA, 42 U.S.C. § 12111(5)(A)).[6]

---

[6]In Freemon v. Foley, the Northern District of Illinois ruled that an individual supervisor could be liable under the 1993 Family and Medical Leave Act ("FMLA") because the cases barring such liability under Title VII were inapposite:

> [T]he definition of an "employer" under Title VII, the ADEA, and the ADA differs from that used in the FMLA. The former statutes define an employer as a person engaged in an industry affecting commerce who employs a certain number of people, "any agent of such person." In

In sum, the court finds that the current trend to eliminate individual supervisor liability cannot at this time be extended to the Equal Pay Act. Therefore, as an initial matter Beaudoin properly is named as an individual defendant in his capacity as the plaintiff's supervisor.

With respect to the merits of the EPA claim, the court finds that the plaintiff has alleged sufficient facts and adduced sufficient evidence to establish a triable issue concerning Beaudoin's status as an employer. The complaint alleges that Beaudoin exercised control in a gender-discriminatory fashion over key terms of the plaintiff's employment, including matters involving the scope of the plaintiff's responsibilities and her position's status in the UNH public safety hierarchy. See Complaint at ¶¶ 22-30. Beaudoin's operational control over the plaintiff's employment responsibilities is evidenced, at least to some degree, by his completion of her annual performance

_____

contrast, the FMLA extends employer status to "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer. Rather than mirroring these discrimination statutes the FMLA tracks word for word the definition used in the Fair Labor Standards Act ("FLSA"). Thus, given the parallel between these two statutes, we look to the FLSA -- rather than [to Title VII, ADA, or the ADEA] to enlighten our interpretation of the term "employer."

911 F. Supp. at 330 (citations omitted) (emphasis supplied).

17

evaluations.  <u>See</u> Plaintiff's Memorandum, Ex. D.  Likewise, the defendant's discovery responses, properly considered under Rule 56(c), indicate that Beaudoin possessed some degree of discretionary authority over the terms of the plaintiff's employment.  For example, in her first set of interrogatories the plaintiff asked

> 2.  For the time period 1980 through the present, please state the name, address and job title of each person in the Division of Public Safety, University Police, safety Department and the Environmental Health & Safety Departments at University of New Hampshire and the University System of New Hampshire responsible for: . . . c) determining wages and salaries

Defendants' Memorandum, Attachment ("Plaintiff's First Set of Interrogatories") at 2.  With respect to the department of public safety, the defendants responded:

> c)  Wage and salary ranges are not decided at the divisional or departmental level.  Departments do, however, have some limited discretion within established pay ranges with respect to initial offers and annual salary adjustment (when available).  When discretion was available, the following persons had this authority: . . . .
>
> Roger W. Beaudoin, Interim Director (10/1/87 - 7/3/88) Janetos House, University of New Hampshire, Durham, NH

<u>Id.</u>  at 3; <u>see</u> <u>id.</u> at 4 (identifying Beaudoin as having limited discretion over compensation matters with respect to university police); <u>see</u> <u>also</u> <u>id.</u> at 3, 4 (identifying Beaudoin as an individual with authority to hire in public safety and university police departments and acknowledging Beaudoin's "authority to

18

submit input" in position description matters in both departments). Finally, although the plaintiff's claim against Beaudoin is weakened by the fact that Beaudoin neither enjoyed unfettered control over the plaintiff's pay scale nor possessed an ownership interest in the institutional defendants, these are not essential ingredients for individual supervisor liability under the EPA.

The plaintiff's allegations and documentary evidence concerning Beaudoin's actual role in the workplace, although not particularly convincing, collectively establish a genuine dispute of whether Beaudoin was the plaintiff's employer under the fact-intensive economic reality test applied in this circuit. Accordingly, the court denies Beaudoin's motion for summary judgment on the federal Equal Pay Act claim alleged in count three.

Conclusion

The court denies the defendants' motion for summary judgment (document no. 17).

The court dismisses <u>sua</u> <u>sponte</u> the plaintiff's state law claims under RSA § 354-A:7, V as set forth in counts one and two.

The clerk shall schedule a status report.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

June 21, 1996

cc:  Edward W. Kaplan, Esquire
     Martha V. Gordon, Esquire