**Maryann E. LAWTON, Plaintiff, Appellant,**

v.

**STATE MUTUAL LIFE ASSURANCE COMPANY OF AMERICA, Defendant, Appellee.**

**No. 96–1609.**

United States Court of Appeals, First Circuit.

Heard Nov. 6, 1996.

Decided Dec. 2, 1996.

---

Roy A. Bourgeois, with whom Nadia R. Totino Beard and Bourgeois, Dresser & White were on brief, Worcester, MA, for appellant.

Neil Jacobs, with whom Daniel W. McCarthy and Hale and Dorr were on brief, for appellee.

Before SELYA, Circuit Judge, ALDRICH, Senior Circuit Judge, and BOUDIN, Circuit Judge.

SELYA, Circuit Judge.

Plaintiff-appellant Maryann E. Lawton alleges that her former employer, defendant-appellee State Mutual Life Assurance Company of America, discriminated against her on account of her gender, in violation of both federal and state law. *See* 42 U.S.C. § 2000e–5 (1994); Mass. Gen. L. ch. 151B, § 4(1) (1996). The district court granted summary judgment in the employer's favor. *See Lawton v. State Mut. Life Assur. Co.*, 924 F.Supp. 331 (D.Mass.1996). Lawton appeals.

We have long proclaimed that when a lower court produces a comprehensive, well-reasoned decision, an appellate court should refrain from writing at length to no other end than to hear its own words resonate. *See, e.g., Ayala v. Union de Tronquistas*, 74 F.3d 344, 345 (1st Cir.1996); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 989 F.2d 36, 38 (1st Cir.1993). Today, we practice what we preach: having read the record and the parties' briefs with care, we affirm the judgment for substantially the reasons elucidated in the opinion below. We add only a few comments.

**First:** The plaintiff claims that her dismissal on August 23, 1991, after more than four years in State Mutual's employ, constituted a discriminatory act. In order to prevail on such a claim in an abolition-of-position case—here, the defendant contends that its business plan changed, rendering the management post that Lawton occupied anachronistic—an ousted employee must adduce

some proof that the employer did not treat gender neutrally in arriving at the challenged employment decision. *See Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 479 (1st Cir. 1993); *Holt v. Gamewell Corp.*, 797 F.2d 36, 37–38 (1st Cir.1986). The district court determined that the summary judgment record in this case affords no such substantiation. *See Lawton*, 924 F.Supp. at 345. The plaintiff disputes this assessment, primarily on the basis that "the sworn testimony of a highly qualified and experienced expert [statistician]" supplies the missing link.

This argument confuses prunes with pomegranates. Assuming, *arguendo*, that the statistician's affidavit is probative at all,[1] it proves only that men, on average, earn more in the defendant's employ than women, and that men, on average, are more likely to be promoted than women. Even if these aspersions are taken as true (and, thus, cast certain of the defendant's employment practices into disrepute), salary level discrimination, in and of itself, is not probative of discrimination *in layoffs*. Indeed, a coldly calculating employer might well seek to dismiss its higher-paid employees while retaining their lower-paid counterparts. Therefore, the court did not err in granting summary judgment on the abolition-of-position claim.

■■■ *Second:* Prior to filing a Title VII action in a federal district court, a plaintiff must exhaust her administrative remedies. Tight time limits constrain this protocol. Lawton worked in Massachusetts, and Massachusetts is a so-called "deferral jurisdiction"—the commonwealth has its own civil rights statute and agency—so exhaustion depends on the filing of a charge with the Equal Employment Opportunity Commission within 300 days of the purported discriminatory act. *See* 42 U.S.C. § 2000e–5(c) (1994); *see also Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181–82 (1st Cir.1989) (describing operation of statutory scheme). Under state law, the timetable is even more compressed. *See* Mass. Gen. L. ch. 151B, § 5 (1996) (providing that an administrative complaint must be filed within six months after the alleged discriminatory act occurs).

In this case the plaintiff contends that, in addition to unlawfully cashiering her, the defendant also refused to promote her on several occasions due to her gender. She filed an administrative complaint attacking both the discharge and the failure to promote on February 17, 1992. The first of the withheld promotions took place in 1987, and the other two occurred in 1990.[2] Since all the promotions transpired prior to April 24, 1991, more than 300 days elapsed between the last of them and the date of the administrative filing. Thus, they all fell outside the applicable limitations period.

The plaintiff tries to detour around this temporal barrier. She clings to the notion that her case presents a "continuing violation," thereby allowing her to reach back beyond the normal limitations period to the earlier promotions. *See, e.g., Sabree v. United Bhd. of Carpenters and Joiners*, 921 F.2d 396, 400 (1st Cir.1990) (explicating continuing violation theory); *Jensen v. Frank*, 912 F.2d 517, 522 (1st Cir.1990) (same); *Mack*, 871 F.2d at 182–83 (same). The district court acknowledged the legitimacy of the continuing violation theory, but found it inapplicable to Lawton's circumstances. *Lawton*, 924 F.Supp. at 339–40. We agree.

■■■ In general, continuing violations arise in one of two incarnations. The first incarnation encompasses serial violations, that is, violations which comprise a number of discriminatory acts emanating from the same discriminatory animus, each of which constitutes a separate wrong actionable under Title VII. *See Jensen*, 912 F.2d at 522; *Mack*, 871 F.2d at 183. To give purchase to this type of continuing violation, at least one act in the series must have occurred within

---

1. State Mutual hotly contests not only the expert's conclusions, but also his methodology and the adequacy of his data base. We need not resolve this contretemps.

2. The plaintiff makes a halfhearted effort to implicate a fourth (more recent) promotion but, as the district court pointed out, her belated reliance on this incident—involving a promotion for which she never applied—came too late because, among other things, she never included any reference to it in her administrative complaint. *See Lawton*, 924 F.Supp. at 338 n. 6.

the limitations period. *See Mack,* 871 F.2d at 183.

Lawton cannot clear this hurdle: as we already have indicated, the foregone promotions all occurred more than 300 days before she initiated agency-level proceedings. Her firing (which took place within the 300–day period) does not fill the void: that act is of a wholly different character, and, moreover, it has not been traced to any discriminatory animus. *See supra.* Common sense teaches that a plaintiff cannot resuscitate time-barred acts, said to be discriminatory, by the simple expedient of linking them to a non-identical, non-discriminatory, non-time-barred act.

██ The other method by which a plaintiff can establish a continuing violation is by demonstrating the existence of a systemic violation. "A systemic violation has its roots in a discriminatory policy or practice; so long as the policy or practice itself continues into the limitation period, a challenger may be deemed to have filed a timely complaint." *Jensen,* 912 F.2d at 523. Lawton asserts that she meets this criterion, and that, therefore, her claim is not pretermitted. This assertion cannot withstand scrutiny.

First and foremost, the plaintiff never articulated any particular discriminatory policy or practice in the district court. In the absence of such an articulation, her systemic violation claim fails. *See Mack,* 871 F.2d at 184 (describing the plaintiff's burden to demonstrate that "a discernible discriminatory policy was in effect, and injured her, during the limitations period"). The generalized references made by the plaintiff in the lower court were patently insufficient to satisfy the applicable standard.

██ Confronted with this omission at oral argument before us, the plaintiff's attorney, in what amounts to confession and attempted avoidance, defined the alleged discriminatory policy as "the practice of not open-posting those jobs which are gateways into the mainstream career path [at State Mutual], with the result that those are reserved for the domain of men making decisions about men."

This rhetorical flourish comes too late, for the plaintiff did not enunciate the supposed policy in the proceedings below (administrative or judicial). No precept is more firmly settled in this circuit than that theories not squarely raised and seasonably propounded before the trial court cannot rewardingly be advanced on appeal.[3] *See, e.g., Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co.,* 953 F.2d 17, 21 (1st Cir.1992); *McCoy v. Massachusetts Inst. of Tech.,* 950 F.2d 13, 22 (1st Cir.1991), *cert. denied,* 504 U.S. 910, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992).

██ In all events, the late-blooming articulation offers too little substance; the stated policy, even if fully considered, would not support the weight of Lawton's case. The record is devoid both of evidence that might explicate the parameters of the policy (e.g., there is no proof as to which positions are "gateways" or how one might distinguish "mainstream career paths"), and of evidence that might show the continued existence of the policy *during the limitations period.* What is more, there is no evidence that Lawton herself was injured by any such policy *during the 300 days preceding her initiation of administrative proceedings.* Consequently, she has not established the kind of systemic violation which would permit her to evade the time bar that blocks her path.

██ *Third:* The plaintiff's fallback position is that the district court acted precipitously. She asseverates that her claims should not have been adjudicated on summary judgment, but, at the very least, ought to have gone to trial. This asseveration lacks merit.

██ The proper province of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). Though the district court must "interpret the record in the light most hospitable to the nonmoving party, rec-

---

3. For that matter, the plaintiff did not enunciate the policy in her appellate briefs. This, too, is a disqualifying factor. *See Sandstrom v. Chem-Lawn Corp.,* 904 F.2d 83, 86 (1st Cir.1990).

onciling all competing inferences in that party's favor," *McIntosh v. Antonino,* 71 F.3d 29, 33 (1st Cir.1995), the nonmovant has a corresponding obligation to offer the court more than steamy rhetoric and bare conclusions. *See id.; see also Morris v. Government Dev. Bank,* 27 F.3d 746, 748 (1st Cir. 1994); *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 7–8 (1st Cir.1990). This principle is accentuated where, as here, a Rule 56 motion targets an issue on which the nonmoving party must carry the devoir of persuasion. In that setting, the nonmovant must "produce specific facts, in suitable evidentiary form," sufficient to limn a trialworthy issue. *Morris,* 27 F.3d at 748. Failure to do so allows the summary judgment engine to operate at full throttle. *See, e.g., Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence").

The district court faithfully applied these tenets in determining that no genuine issue of material fact loomed in respect to either the abolition-of-position or failure-to-promote claims. Although Lawton labors to show discrepancies here and there, "genuineness and materiality are not infinitely elastic euphemisms that may be stretched to fit whatever pererrations catch a litigant's fancy." *Blackie v. State of Me.,* 75 F.3d 716, 721 (1st Cir.1996). On the key factual issue related to her ouster—the presence or absence of the requisite discriminatory intent—the probative evidence points in only one direction. A factfinder, drawing *reasonable* inferences from the nisi prius roll, could not conclude without undue speculation that the defendant acted from a gender-based animus in eliminating the plaintiff's job. Thus, *brevis* disposition was appropriate on that issue. *See Medina–Munoz,* 896 F.2d at 8· (explaining that summary judgment may be granted on "intent" issues). So, too, with the promotion-related claims; questions dealing with the applicability and effect of the passage of time on particular sets of facts often

are appropriately disposed of at the summary judgment stage, *see, e.g., Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 352 (1st Cir.1992); *Jensen,* 912 F.2d at 520, and this case fits snugly within that paradigm.[4]

Mindful of the district court's more exegetic treatment of these, and other, matters, we need go no further.

***Affirmed.***

---

4. When a defendant moves for summary judgment based in part on a plausible claim that the plaintiff's suit is outlawed by the passage of time, "the onus of identifying a trialworthy issue customarily falls on the plaintiff." *McIntosh,* 71 F.3d at 33. Here, Lawton has not identified any such issue.