Sweet v. Hadco and Breton          CV-95-576-M 02/03/97
                  UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE


Debora Sweet

     v.                                      Civil No. 95-576-M

Hadco Corporation and
Robert Breton


                         O R D E R


     Debora Sweet brings suit against her former employer, Hadco

Corporation, asserting gender discrimination in violation of

Title VII, 42 U.S.C.A. § 2000e, and a claim of constructive

discharge.[1]  Hadco moves for summary judgment on the grounds that

Sweet failed to exhaust her administrative remedies in a timely

manner as required by 42 U.S.C.A. § 2000e-5.  Hadco also asserts

that Sweet cannot prove her constructive discharge claim.  For

the reasons that follow, summary judgment is granted in part.


                      **STANDARD OF REVIEW**

     Summary judgment is appropriate if the "pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

_____

     [1]  Several of Sweet's claims were previously dismissed.  She
also sued her former fellow employee and supervisor, Robert Breton.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party first must show the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If that burden is met, the opposing party can avoid summary judgment on issues that it must prove at trial only by providing properly supported evidence of disputed material facts that would require trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court interprets the record in the light most favorable to the nonmoving party, the plaintiff in this case, and resolves all inferences in her favor. McIntosh v. Antonio, 71 F.3d 29, 33 (1st Cir. 1995). Accordingly, summary judgment will be granted only if the record shows no trial worthy factual issue and that the moving party, the defendant here, is entitled to judgment as a matter of law. EEOC v. Green, 76 F.3d 19, 23 (1st Cir. 1996).

## FACTUAL BACKGROUND

Sweet worked as a drill operator at Hadco Corporation from October 1987 until January 1995. In 1990, she began to date her supervisor, Robert Breton. The relationship developed and included living together for a time. Sweet contends that she attempted several times to end the relationship but was forced to

2

continue by Breton's abusive behavior at and outside of work. As the relationship deteriorated and ended, Breton became more abusive, even threatening to "blow her away" if she left him. Although Sweet had sought help from Hadco's Human Relations office on occasion during tumultuous periods in the relationship, after she ended the relationship in September 1993, her complaints about Breton increased. Breton pressured her to resume the relationship both at and outside of work.

At the end of November 1993, Sweet moved from the Tech Center One building, where Breton was her supervisor, to a temporary position on a Tech Center One job located across the street at Salem Drill. Although Sweet worked in another building, she remained an employee of Tech Center One and returned to the Tech Center One building frequently. Breton continued to harass Sweet with calls and letters and when he saw her at work. He also checked on her through mutual friends. Sweet contacted a lawyer about her work situation in December 1993, who recommended that she talk to Hadco management. Sweet met with Cameron Ogden, Tech Center One plant manager, and Jim Lewis, Human Relations manager, at the beginning of January 1994. She explained her problems with Breton and Ogden told her that if she would give him some time, he would remedy the situation and she would have a lateral or better position.

Hadco issued a warning letter to Breton on January 5, 1994, instructing him to stop all contact and communication with Sweet or risk losing his job. Sweet reports that Breton stopped contacting her directly after the January warning, but that whenever she was in the Tech Center One building, he would follow her and whistle in an "eerie" way. Sweet also says that Breton denied her overtime pay in April 1994, but that Lewis rectified the situation.

During this time, Sweet was friendly with Robert Grillo, another fellow employee at Tech Center One. Breton accused Grillo of having an affair with Sweet in November 1993, which Grillo denied, and threatened to inform Grillo's wife. Grillo's wife filed for divorce in January 1994 naming Sweet as co-respondent on an adultery charge. Sweet and Grillo began a relationship at about the same time. Breton continued to show hostility toward Grillo at work including elbowing or pushing him when they passed in hallways.

In June and July 1994, Sweet met with Jim Lewis and other managers about her position at Hadco. Her temporary position was scheduled to end that fall, and Hadco offered to return Sweet to her former job at Tech Center One on the first shift, while moving Breton to the third shift to minimize their contact. Sweet was still concerned about contact with Breton and his anger

4

if he were transferred to the third shift. On the advice of her therapist, Sweet decided not to return to her job at Tech Center One. At that time, Sweet was represented by her present counsel, who wrote to Hadco at the end of July about her employment. In response, Lewis offered Sweet the same Tech Center One job and another drill operator position in a different department at a lower grade, but at her current pay. Sweet again declined the jobs offered. Sweet applied for a purchasing clerk position at a lower grade than her current position because the job was in Derry rather than in Salem where Tech Center One was located. She was not considered for that position, and stayed in her temporary position at Salem Drill.

On August 19, 1994, Sweet obtained a restraining order against Breton and provided a copy to the Hadco Human Resources manager. Lewis responded that since Hadco had assigned Sweet to work outside of Tech Center One and had offered her two jobs that would minimize contact with Breton, which she refused, she was responsible for avoiding contact while at work and that Hadco would not take responsibility for enforcing the restraining order. The letter stated that Breton was and would remain a Hadco employee at Tech Center One. Thereafter, Sweet did not go to the Tech Center One building, although she remained a Tech Center One employee.

5

Beginning in the summer of 1994, Sweet was no longer included in Tech Center One activities. In July and August, she was taken off the Tech Center One safety committee, and she was not invited to a Tech Center retirement party for an old friend. During the fall, she was not included in an employee appreciation day, a United Way meeting, or a plant sexual harassment meeting. Finally, in November, she was excluded from a plant-wide quarterly celebration.

In December 1994, a subpoena in the Grillo divorce case was served on Jim Lewis requiring him to appear in court with Sweet's personnel records. Sweet had moved her residence and changed her telephone number to prevent Breton from contacting her and did not want her present address and telephone number made public. She explained her concern to Lewis and that she was contacting her lawyer to have the subpoena quashed. Lewis told her that it would take him two days to collect the information giving Sweet time to obtain a court order. Sweet's lawyer called Lewis the same day and asked him not to release the records. Despite his assurances, Lewis delivered Sweet's records to Mrs. Grillo's lawyer before the subpoena required production and before Sweet had a chance to obtain an order. Because Sweet's personnel file had already been released, including her current address and

telephone number, Sweet's motion to quash the subpoena was denied as moot.

Sweet ended her employment at Hadco on January 6, 1995. She filed a complaint with the New Hampshire Commission on Human Rights ("NHCHR") on February 8, 1995.

## DISCUSSION

Hadco challenges Sweet's Title VII claim on the grounds that her complaint was not timely filed with the NHCHR, a prerequisite to maintaining her claim here. Hadco also asserts that Sweet cannot show facts to support her constructive discharge claim. The issues are addressed in order.

## A.  Title VII Claim

### 1.  Filing period.

Title VII requires plaintiffs to exhaust administrative remedies before filing a Title VII suit in federal court. <u>Lawton v. State Mutual Life Assurance Co. of America</u>, 101 F.3d 218, 221 (1st Cir. 1996). The general rule requires complaints to be filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the discriminatory act, unless the complaint is first filed with an authorized state agency, in which case it must be filed within 300 days. 42 U.S.C.A. § 2000e-5(e); <u>EEOC v.</u>

<u>Commercial Office Products Co.</u>, 486 U.S. 107, 110 (1988). Because authorized state agencies have 60 days of exclusive jurisdiction within which to conduct their own proceedings, a complaint must be filed within 240 days to meet the 300 day limit unless the state agency terminates its proceedings within the 300 day period.  42 U.S.C.A. § 20003-5(c); <u>EEOC</u>, 486 U.S. at 111.

Title VII's statutory time limits may be affected by the terms of work sharing agreements between the EEOC and authorized state agencies in deferral states.  <u>See, e.g.</u>, <u>EEOC</u>, 486 U.S. at 112; <u>EEOC v. Green</u>, 76 F.3d 19, 23 (1st Cir. 1996); <u>Russell v. Delco Remy Div. of General Motors Corp.</u>, 51 F.3d 746, 750-51 (7th Cir. 1995).  New Hampshire is a deferral state, meaning that it has its own fair employment practices statute, New Hampshire Revised Statutes chapter 354-A, and enforcement agency, the NHCHR.  <u>See</u> 42 U.S.C.A. § 2000e-5(c).  The NHCHR has entered into yearly work sharing agreements with the EEOC.  <u>See</u> <u>Madison v. St. Joseph Hospital</u>, No. 95-239-SD, 1996 WL 734873 at *3 (D.N.H. August 28, 1996).

Under the terms of the 1995 work sharing agreement relied on by Hadco, the NHCHR and EEOC have agreed to serve as each other's agent for purposes of filing complaints and the NHCHR has waived its 60-day exclusive jurisdiction period under certain circumstances including when claims are filed with the NHCHR more

8

than 240 days after the last violation.  See 1995 EEOC-NHCHR Work sharing Agreement at II, A and III, A, 1.  Thus, any complaint filed with the NHCHR is deemed as also filed with the EEOC.  See Madison, 1996 WL 734873 at *4.  The effect of the dual-filing rule and NHCHR's waiver of its exclusive jurisdictional period is to allow claimants the full 300-day filing period.  See id.

Accordingly, Sweet had 300 days from the last discriminatory act to file her complaint.  She filed on February 8, 1995.  The 300-day period, therefore, began on April 14, 1994.

## 2.  Timeliness of Sweet's administrative complaint.

While filing within the administrative filing period imposed by Title VII is a statutory prerequisite to bringing a Title VII suit in federal court, timely filing is not a jurisdictional requirement.  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398 (1982).  Like a statute of limitations, then, the equitable doctrines of waiver, tolling, and estoppel are applicable to the filing period.  Id. at 393.  Thus, if a plaintiff can show that she suffered discrimination that was part of a continuing violation of Title VII she can "reach back" to conduct that occurred outside of the filing period.  Lawton, 101 F.3d at 221; Sabree v. United Broth. of Carpenters and Joiners, 921 F.2d 396, 400 (1st Cir. 1990).

9

Sweet contends that Breton's sexual harassment and other discrimination against her began in 1992 and continued until she left Hadco in January 1995.  Even under a continuing violations theory,[2] "[p]laintiff bears the burden of demonstrating that at least one discriminatory act occurred within the limitations period."  Muniz-Cabrero v. Ruiz, 23 F.3d 607, 610 (1st Cir. 1994); accord Lawton, 101 F.3d at 221-22.  Breton's "eerie" whistling as he followed Sweet when she was in the Tech Center One building between January and August 1994 appears to be the only behavior violating Title VII and falling within the limitations period that Sweet offers and that is supported in the record.[3]

_____

[2]  Two types of continuing violations are recognized: serial violations and systemic violations.  Lawton v. State Mutual Life Assurance Co. of America, 101 F.3d 218, 221-222 (1st Cir. 1996).

[3]  Sweet states broadly that she experienced "a continuing hostile work environment that continued until the day she left Hadco" and that she "suffered quid pro quo sexual harassment by Mr. Breton every time that she attempted to leave him from 1992 through January 1995."  She supports few specific incidents within the filing period (after April 14) with citations to facts in the record.  Sweet asserts that Breton denied her overtime pay sometime in April, but she relies exclusively on her own deposition testimony which does not fix a date.  Similarly, her assertion that Breton harassed her through mutual friends is not supported by citations to the record that establish that those incidents occurred after April 14.
Sweet states that her exclusion from employee events was part of the hostile workplace she experienced, but she has not explained how those acts relate to gender discrimination.  She also contends that Breton's mistreatment of Bob Grillo, and Grillo's divorce,

10

Although it is not entirely clear from Sweet's submissions in opposition to summary judgment, she seems to contend that Breton's whistling while following her constituted hostile environment sexual harassment.  Hostile environment sexual harassment consists of "offensive, gender-based conduct that is 'severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive' and is subjectively perceived by the victim to be abusive." Lattimore v. Polaroid Corp., 99 F.3d 456, 463 (1st Cir. 1996) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).  Incidents that are not explicitly sexual may nevertheless constitute sexual harassment and create a hostile environment if the abusive treatment is based on or aimed at the gender of the victim and if the incidents otherwise meet the standard of creating a hostile environment. See King v. Hillen, 21 F.3d 1572, 1583 (Fed. Cir. 1994); Hall v. Gus Const. Co., 842 F.2d 1010, 1013 (8th Cir. 1988); Ruffino v. State Street Bank and Trust Co., 908 F. Supp. 1019, 1036 n.28 (D. Mass. 1995).

Hostile environment discrimination claims typically require

---

were part of the defendants' harassment of her.  As she has not explained how those occurrences discriminated against her because of her gender, those claims are also disregarded.  See Mack v. Great Atlantic and Pacific Tea Co., 871 F.2d at 179, 183 (1st Cir. 1989) (plaintiff bears the burden of presenting her theories clearly to have them considered).

11

a contextual examination because "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." Harris, 510 U.S. at 23.  If Breton's following her and whistling were considered in circumstantial isolation, that conduct alone would not create a hostile work environment.  Isolated analysis is not appropriate, however. Actions that occurred prior to the filing period may be considered as background to determine whether actions within the filing period constitute violations of Title VII.[4]  See, e.g., United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977); Cortes v. Maxus Exploration Co., 977 F.2d 195, 199-200 (5th Cir. 1992); Mandy v. Minnesota Mining and Mfg., 940 F. Supp. 1463, 1469 (D. Minn. 1996); Ruffino v. State Street Bank and Trust, 908 F. Supp. 1019, 1039 (D. Mass. 1995).

Taking Breton's following Sweet and whistling in the light most favorable to her, and in the context of his alleged abusive and sexually harassing conduct prior to January 1994, Sweet could reasonably have understood him to be continuing his previous sexually harassing behavior.  The apparent reason Sweet was the

---

[4]  The harassing conduct within the limitations period, eerie whistling and following, was new harassment aimed at Sweet, at least arguably discriminatory, and, therefore, was something more than the mere effect of Breton's prior conduct.  See Kassaye v. Bryant College, 999 F.2d 603, 606 (1st Cir. 1993); Ruffino, 908 F. Supp. at 1038.

target of Breton's attention was that she had spurned his sexual interest in her. A related threat might reasonably be inferred from his continuing inappropriate attention, particularly after Hadco had clearly warned him to have no contact with Sweet. Certainly Sweet and the Hadco managers perceived a continuing threat from Breton; all seemed to agree that she could not continue to work at Tech Center One with him. As a result, her continued job opportunities at Hadco were restricted. That view of Breton's conduct, again in the light most favorable to Sweet at this early juncture, raises a trial worthy factual issue as to whether his actions after April 14 continued to impose a hostile work environment upon Sweet.

### 3. Application of the continuing violations theory.

Consideration of prior conduct as evidence of discrimination occurring within the limitations period does not convert untimely claims into timely ones. Timely filing as to one discriminatory action is only the first step toward establishing a continuing violation that would allow Sweet to "reach back" to recover for conduct that occurred prior to the filing period. Under a continuing violations theory, Sweet must be able to show that she suffered discrimination that was either part of a series of violations or was due to a systemic violation of Title VII.

13

<u>Lawton</u>, 101 F.3d at 221; <u>Sabree</u>, 921 F.2d at 400.  Sweet seems to rely only on a serial violations theory as to her claims based on Breton's conduct, and accordingly only that theory is considered. <u>See</u> <u>Mack</u>, 871 F.2d at 183 (plaintiff's burden to clearly present the theory of her claims).

Serial violations "comprise a number of discriminatory acts emanating from the same discriminatory animus, each of which constitutes a separate wrong actionable under Title VII." <u>Lawton</u>, 101 F.3d at 221.  To recover for actions beyond the filing period, once she has shown a discriminatory action within the filing period, Sweet must show a "substantial relationship" between the timely and untimely conduct.  <u>Sabree</u>, 921 F.2d at 400.  The most important factor to consider in determining whether a substantial relationship exists is the degree of "permanence" of the untimely acts, meaning the extent to which the plaintiff was aware of her claims but failed to file a timely administrative complaint.  <u>Id.</u> at 402; <u>Bergstrom v. University of New Hampshire</u>, 943 F. Supp. 130, 133 (D.N.H. 1996).  In other words, if the plaintiff knew that she had actionable claims but suffered continuing discrimination without filing a complaint, those acts are not substantially related to later actions within the filing period.  <u>Id.</u>  Thus, Sweet must be able to establish (1) that the earlier acts were not isolated events but related to

14

the acts on which she bases her timely claims, (2) that all were motivated by the same intent to discriminate against her, and (3) that a plaintiff would not have appreciated the discrimination she experienced until the acts within the limitations period occurred.  See Smith v. Bath Iron Works Corp., 943 F.2d 164, 166 (1st Cir. 1991); Lawton v. State Mut. Life Assurance Co. of America, 924 F. Supp. 331, 340 (D.Mass.), aff'd, 101 F.3d 218 (1st Cir. 1996).

In this case, the serial violations analysis begins and ends with the third and most important factor:  whether Sweet was on notice of her claims before the filing period, precluding a substantial relationship between timely and untimely acts.  Sweet does not deny that she was aware that Breton's conduct toward her constituted harassment before April 1994, but she contends that she relied on Hadco management's assurance that they would remedy the situation with Breton.  Consequently, Sweet asserts, Hadco should be equitably estopped from asserting that she was aware of her claim before the limitations period.

Equitable estoppel may modify a Title VII administrative filing period if "an employee is aware of his . . . rights but does not make a timely filing due to his reasonable reliance on his employer's misleading or confusing representations or conduct."  Kale v. Combined Ins. Co. of America, 861 F.2d 746,

15

752 (1st Cir. 1988) (discussing estoppel in ADEA context); accord Lawton, 924 F. Supp. at 339 (estoppel in Title VII case) and Ruffino, 908 F. Supp. at 1040-41 (same). In this case, Sweet complained to Hadco management about Breton's harassment, particularly after September 1993. She says that she complained about Breton at least twice after she moved to Salem Drill at the end of November. In December, Sweet contacted an attorney about the harassment and Hadco's failure to remedy the situation.

On the advice of her attorney, Sweet met with Cameron Ogden, Tech Center One plant manager, in an attempt to get Hadco to intervene to control Breton. Their meeting was in early January 1994. Sweet says that she had little confidence in Ogden or Hadco's willingness to do anything to help her, but that Ogden gave her his personal guarantee that "everyone would come out of this feeling good about themselves, that he could make things happen if I just gave him a little time, and he would get me either a lateral or a better position, all I had to do was give him some time." Despite her doubts, she says she left the meeting thinking that Ogden would do something.

Within days of the meeting, another Hadco manager sent Breton the January 5, 1994, warning that he should have no contact with Sweet or risk losing his job. In response to the warning, Sweet contends, Breton stopped calling, writing, and

16

shouting at her, but began his following and whistling harassment. That conduct, which Sweet recognized as harassment and about which she complained to Hadco management, continued through August 1994 when Sweet says she stopped going into the Tech Center One building of her own volition. Nevertheless, Sweet did not file her complaint with the NHCHR until February 1995 more than a year after the following and whistling began. Based on these factual circumstances, Sweet cannot show that she reasonably relied on Ogden's assurances to delay filing as long as she did.

Because the record facts show that Sweet was aware of her harassment discrimination claims more than a year before she filed her NHCHR complaint, those claims were permanent then, and she has not shown that reliance on Ogden's assurances or Hadco's conduct reasonably delayed her filing. Accordingly, Sweet has not established a continuing series of violations, and her claims based on acts, conduct, and occurrences before April 14, 1994, are time-barred.

## B. Constructive Discharge

Hadco moves for summary judgment on Sweet's constructive discharge claim on the grounds that she cannot prove the elements of her claim. "It is well settled in this Circuit that, to

17

establish a claim of constructive discharge, the evidence must support a finding that the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Greenberg v. Union Camp Corp., 48 F.3d 22, 27 (1st Cir. 1995) (internal quotations omitted). Because the standard is an objective one, a particular employee's sensitivity to a working environment is not relevant. Id.

In response, Sweet argues that Jim Lewis's letters to her in the summer of 1994 show that he (and therefore Hadco) intended to terminate her. Then, she contends, Hadco excluded her from six activities at Tech Center One from July through November 1994 and Lewis turned over her personnel file in the Grillo divorce action in December, all of which made her working conditions intolerable. She resigned on January 4, 1995.

These factual circumstances, even taken in toto, however, do not rise to the level sufficient to support a theory of constructive discharge. See Harriston v. Chicago Tribune Co., 992 F.2d 697, 705 (7th Cir. 1993) (exclusion from office activities, unwarranted reprimands, and several adverse employment assignments not intolerable so as to cause constructive discharge). In addition, the events Sweet points to are not the deeply demeaning and humiliating experiences

18

compelling resignation that ordinarily constitute constructive discharge.  See Greenberg, 48 F.3d at 27.  Based on the record Sweet presents, then, no rational jury could conclude that she was compelled to resign due to unpleasant or difficult working conditions.  Summary judgment is granted on this claim in favor of Hadco.

## CONCLUSION

Hadco's motion for summary judgment (document no. 14) is granted in part and denied in part.  Sweet's Title VII claim is limited to conduct and events that occurred after April 14, 1994, and summary judgment is granted in Hadco's favor on her constructive discharge claim.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

**February 3, 1997**

cc:  James W. Craig, Esq.
     William H. Barry, III, Esq.
     Charles A. Szypszak, Esq.
     Patricia Randall, Esq.

19