PRISMA ZONA EXPLORATORIA DE
PUERTO RICO, INC., Plaintiff,

v.

Sila M. CALDERON, et al., Defendant

CIV. No. 01–1836(PG).

United States District Court,
D. Puerto Rico.

Sept. 17, 2001.

Jane A. Becker–Whitaker, Law Offices of Jane Becker, Whitaker, PSC, Luis G. Rullan–Marin, Zoraida Buxo–Santiago, Rullan & Buxo, P.S.C., San Juan, PR, for Prisma Zona Exploratoria De Puerto Rico, Inc., plaintiffs.

Salvador J. Antonetti–Stutts, Director, Department of Justice of PR, Federal Litigation Division, Carlos Del–Valle–Cruz, Department of Justice of P.R., Federal Litigation Division, Rafael Escalera–Rodriguez, Nestor J. Navas–D'Acosta, Reichard & Escalera, San Juan, PR, for Sila Maria Calderon, Hon. Juan Agosto–Alicea, Jorge Pesquera, Jose V. Pagan, The Children's Trust Fund, Government Development Bank for Puerto Rico, John Doe, George Doe 01CV1836 and Jane Doe, defendants.

### OPINION & ORDER

PEREZ–GIMENEZ, District Judge.

The Court is faced with the task of ruling on defendants' motion to dismiss which presents a myriad of complex legal issues. Having received plaintiff's opposition, the court will analyze and resolve the issues presented by defendants in their motion and during oral arguments. As the court is cognizant of the facts of the case, it opts to discuss them only as they are necessary for a thorough understanding of today's ruling.

## STANDARD OF REVIEW

When ruling on a 12(b)(6) motion a court must accept all well-pled factual averments as true and must draw all reasonable inferences in the plaintiffs' favor. *Berezin v. Regency Savings Bank*, 234 F.3d 68, 70 (1st Cir.2000); *Negron–Gaztambide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir. 1994). A Court should not dismiss a complaint for failure to state a claim unless it is clear that plaintiff will be unable to recover under any viable theory. *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank*, 958 F.2d 15, 17 (1st Cir.1992). Plaintiff, however, may not rest merely on "unsupported conclusions or interpretations of law". *Washington Legal Foundation v. Massachusetts Bar Foundation.*, 993 F.2d 962, 971 (1st Cir.1993). "Subjective characterizations or conclusory descriptions of a general scenario which could be dominated by unpleaded facts will not defeat a motion to dismiss." *Coyne v. City of Somerville*, 972 F.2d 440, 444 (1st Cir.1992). "A complaint must set forth a factual allegation either directly or inferential respecting each material element necessary to sustain recovery under some actionable legal theory." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir.1997). *See also Roth v. United States*, 952 F.2d 611, 613 (1st Cir.1991) (Stating that a plaintiff is obliged to allege facts regarding each essential element necessary to entitle him to recovery). "When a complaint omits facts that, if they existed, clearly would dominate the case, it is fair to assume that those facts do not exist." *O'Brien v. DiGrazia*, 544 F.2d 543 (1st Cir.1976).

### 1. PLAINTIFF DID NOT COMPLY WITH THE ELIGIBILITY REQUIREMENTS

██ On July 30, 1999 the Governor of Puerto Rico, Hon. Pedro Rosello, signed a law that created The Children's Trust

Fund ("the Fund"). *See* 24 LPRA §§ 3121 *et seq.* The Fund, a non-for profit entity, was created in order to channel the funds that Puerto Rico received as a result of the Smokeless Tobacco Settlement Agreement. The Fund's main objective is to finance programs aimed at the promotion of the welfare of Puerto Rico's youth.

PRISMA, plaintiff of record, is one of the programs that sought funding from the Children's Trust Fund. PRISMA, a private non-profit corporation, was created in order to develop, manage, promote and sponsor a children's museum or interactive center known as "PRISMA zona exploratoria". When the Fund withheld PRISMA's financing after a change in government, PRISMA brought a § 1983 suit claiming political discrimination.

The law that created the Fund ("the trust law") specifically states that an entity cannot receive financial assistance unless it complies with the trust law and the internal regulations subsequently passed by the board of the Trust. See Amended Complaint at p. 11 and 24 L.P.R.A. § 3121(e). All beneficiary entities must comply with all operational, administrative, budgetary and other requirements imposed on it by the Trust as a condition for financial assistance.

On September 29, 1999, the board of directors of the Trust approved an internal regulation (the regulation) to establish, among other things, eligibility requirements for beneficiary entities. Said regulation was filed with the Department of State under Num. 6099 on February 22, 2000[1]. Importantly, Article 12 of the regulations provides that all beneficiary entities must enter into an assistance service contract with the Trust before receiving financial assistance. Specifically, Article 12 states, in its pertinent part, that:

"... Any financial assistance provided by the Fund is a privilege since the board of directors has exclusive discretion to determine the entities that will receive funding. A financial service contract will be entered into between the fund and the beneficiary entity. The same should have specific clauses delineating the responsibilities of the parties as well as the obligations that the beneficiary entity has as to the use of the funding, the presentation of the necessary reports required by law or regulation and any other that is deemed necessary. The concession of benefits is a privilege and is left to the prerogative of the Fund through its board of directors. Additionally, the contract will contain any other clauses that the board of directors deems necessary."

Defendants claim that plaintiff's failure to enter into a service contract with the Trust makes plaintiff ineligible to receive funding. Because the complaint seeks the disbursement of allegedly due funds and plaintiff is not a beneficiary entity, defendants argue that the complaint fails to state a claim upon which relief can be granted. Defendants' position is a strong one. Any entity that desires to receive funds from the Trust must become a beneficiary entity. To become a beneficiary entity the Trust's own regulation requires a valid service contract. Plaintiff has not entered into one. As a consequence, it wasn't even legal for defendants to issue financial assistance to plaintiff.

Plaintiff in opposition makes two arguments. First, it cites *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) and *Cuban Museum of*

---

1. The regulation is entitled: "Regulation for the Establishment of Eligibility Requirements and Monitoring Criteria Under the Law of the Children's Trust Fund; Law Num 173 of July 30, 1999" (translation ours).

*Arts and Culture, Inc., v. City of Miami,* 766 F.Supp. 1121 (S.D.Fla.1991) for the proposition that the lack of an established right to a benefit does not permit the state to deny a benefit on unconstitutional grounds. According to plaintiff, a contract is not needed in order to bring a valid discrimination case. Second, Plaintiff argues that even if there is no valid written contract, there was an oral contract between the parties. The existence of this oral contract is evidenced by the fact that the parties had written out the content of the service agreements but had failed to sign them. Thus, the parties had reached an understanding as to the material elements of the contract. Plaintiff insists that the existence of an oral contract should be enough to shroud any deficiency of form.

The Court is unconvinced by plaintiff's arguments as they fail to effectively answer why plaintiff didn't follow the procedure mandated by the trust law and the regulation. The regulation couldn't be clearer: "A financial service contract will be entered between the Trust and the beneficiary entity". Failure to enter into this financial service contract deprives any entity of funding as "any financial assistance provided by the Fund is a privilege". Entities must comply with the exigencies provided in the regulation prior to any disbursement of funds. Providing financial assistance to any entity without a service agreement, which is basically what the complaint asks this court to do, would not only be unreasonable, but it would be illegal. *Perry,* 408 U.S. 593, 92 S.Ct. 2694 and *Cuban Museum,* 766 F.Supp. 1121 do not change this situation. Neither do citations to Puerto Rican law which validate oral contracts. Oral contracts may be val-

id in Puerto Rico, but plaintiff must still comply with the regulation in order to be granted financial assistance. Plaintiff failed to do so.

Although this is probably enough to grant defendants' motion to dismiss, defendants' motion presents other points that strengthen today's decision.

### 2. PLAINTIFF HAS SUED THE WRONG PARTIES[2]

■ The complaint as it relates to some of the defendants must be dismissed because these defendants do not have the power to release the funds sought by plaintiff. The law of the Trust and Regulation # 6099 make clear that the disbursement of funds is the sole prerogative of the Board of Directors of the Trust. As such the complaint must be dismissed as to Jorge Pesquera, the ex-executive Director of the Tourism Company; Milton Segarra Pancorbo, the Executive Director of the Tourism Company; Jose V. Pagan Executive Vice President of the Government Development Bank and The Government Development Bank. None of these entities or persons have any authority to release the funds.

### 3. PLAINTIFF'S FIRST AMENDMENT CLAIM FAILS

■ It is well established that political discrimination restrains freedom of belief and association, core activities protected by the First Amendment. *See Elrod v. Burns,* 427 U.S. 347, 354, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Padilla–Garcia v. Guillermo Rodriguez,* 212 F.3d 69, 74 (1st Cir.2000). In their motion, defendants contend that plaintiff's First Amendment claim should be dismissed because 1) the Supreme Court has refused to recognize a

2. Although this is one of defendant's strongest arguments, plaintiff in opposition fails to ade- quately address it.

First Amendment protection claim for those who have no prior contractual obligation with the government [3] and 2) defendants have shown that they have a valid reason to withhold funding in compliance with the Supreme Court's ruling in *Mt. Healthy City School District Board v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

Plaintiff in opposition responds by stating that: 1) the absence of a contract does not allow defendants to discriminate against it [4] 2) in *O'Hare*, a case where the Supreme Court recognized plaintiff's First Amendment Claim, plaintiff did not have a contract but a mutual understanding that the city would maintain O'Hare in the list of service providers. See *O'Hare Truck Service v. City of Northlake*, 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996) and 3) even if there is no written contract between the parties there was a valid oral contract between them.

The Court is faced with a situation where it must decipher the First Amendment's impact on the awarding of a governmental benefit or contract. The Supreme Court's pronouncement in *Perry*, 408 U.S. 593, 92 S.Ct. 2694 does suggest that the lack of a contractual right does not, in itself, defeat a First Amendment claim. In *Perry* the Supreme Court emphatically stated that:

> "The first question presented is whether the respondent's lack of a contractual or tenure right to re-employment, taken alone, defeats his claim that the non-renewal of contract violated the First and Fourteenth Amendments. We hold that it does not.

For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number or reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech."

*Perry*, 408 U.S. at 596–97, 92 S.Ct. 2694. Thus, the Supreme Court has made clear that the Government cannot withhold a benefit if the decision to withhold is based on unconstitutional grounds even in the absence of a contractual right.

Since 1972, the year when *Perry* was decided, the Supreme Court has had occasion to revisit situations where the plaintiff asserts a First Amendment claim after the government has terminated an existing commercial relationship. In *O'Hare* and *Umbehr* the Supreme Court held that the Government may not terminate an independent contractor's business relationship in order to retaliate against the contractor for the exercise of his political association right. Importantly, the *Umbehr* Court, stated that:

> "Finally, we emphasize the limited nature of our decision today. Because Umbehr's suit concerns the termination of a pre-existing commercial relationship with the government, we need not address the possibility of suits by bidders or applicants for new government contracts who cannot rely on such relationship."

---

3. For this proposition defendants cite *Board of County Commissioners v. Umbehr*, 518 U.S. 668, 685, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996) and *McClintock v. Eichelberger*, 169 F.3d 812 (3rd Cir.1999)

4. For this proposition plaintiff cites *Perry*, 408 U.S. 593, 92 S.Ct. 2694 and *Cuban Museum*, 766 F.Supp. 1121.

*Umbehr*, 518 U.S. at 685, 116 S.Ct. 2342. The *Umbehr* Court thus made it categorically clear that its holding did not apply to applicants or bidders for new government contracts, it only applies to those plaintiffs who can demonstrate that they have a pre-existing commercial relationship with the government. In *Umbehr* the Court refused to extend First Amendment protection to bidders or applicants for government contracts who do not have a pre-existing commercial relationship with the government.

■ An unbounded reading of Supreme Court's jurisprudence on the subject (*Perry, O'Hare, Umbehr* [5]) leads to the following conclusion of law: the government cannot deny a governmental benefit or contract if it bases that decision on unconstitutional grounds. The First Amendment protects any entity or person (who has been denied a benefit on unconstitutional grounds) if that person has a pre-existing commercial relationship with the government. An actual contract is not needed. The Supreme Court has refused to extend First Amendment protection to bidders or applicants of government contracts. See also *McClintock*, 169 F.3d 812 (3rd Cir.1999) (Refusing to extend First Amendment protection to a bidder or applicant for a government contract).

The question whether the First Amendment affords protection to plaintiff is thus dependent on the type of relationship that the plaintiff has with the governmental agency. Upon review of the record, the Court concludes that PRISMA is at a different position than those plaintiffs who have been afforded First Amendment protection in the past. In all cases where the Supreme Court has recognized plaintiff's First Amendment claim (after plaintiff had been denied a governmental contract or benefit), plaintiffs provided ongoing services or enjoyed a pre-existing commercial/contractual relationship with the government. For example, *Umbehr* and *O'Hare* respectively involved trash hauling and motor vehicle towing, municipal services of an ongoing character. In *O'Hare* the municipality had a list of tow trucks operators which had included Mr. O'Hare for many years. In *Umbehr* plaintiff had been towing trash for six years and his contract automatically renewed unless either party terminated it. In *Perry*, the collage professor that brought the suit had been employed for over ten years [6].

■ Plaintiff in this case was negotiating a service contract when the change in government took place. Entering that service contract was legally required in order to be eligible for financial assistance. The service contract would delineate plaintiffs rights vis-vis the Trust. The law that created the Trust (and the subsequent internal regulation) empowered the Trust to deny benefits until that contract was entered into. Under these circumstances, the Court can only reach

5. For cases dealing with political affiliation in the employment context see *Elrod*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (the right to associate with the political party of one's choice is a basic constitutional freedom); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990).

6. The same holds true for *Cuban Museum*, 766 F.Supp. 1121 and *Brooklyn Institute of Arts and Sciences v. City of New York*, 64 F.Supp.2d 184 (E.D.N.Y.1999). In *Cuban Museum*, the Museum brought an action against the city of Miami after the city refused to renew its lease. In *Brooklyn Institute*, a contract between the parties provided that the city would pay each year a sum necessary for the maintenance of the museum. Thus, in both of these cases there was a pre-existing commercial relationship between the entities and the government.

one conclusion: plaintiff was an applicant or bidder for a government contract. In following the Supreme Court's lead in *Umbehr* (which refused to extend First Amendment Protection to bidders or applicants of government contracts), this Court must dismiss plaintiff's First Amendment claim [7].

■ Nonetheless, even if this Court were to extend the current boundaries of First Amendment jurisprudence there is another reason that compels dismissal of plaintiff's First Amendment claim. In *Mt. Healthy*, the Supreme Court established a two part burden-shifting analysis for evaluating free speech claims [8]. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568. First, the plaintiff must establish a *prima facie* case by demonstrating that he engaged in constitutionally protected conduct, and that this conduct was a substantial motivating factor for the adverse employment decision. Second, once plaintiff establishes his *prima facie* case, defendant is given the opportunity to establish, by a preponderance of the evidence, that it would have taken the same action regardless of the plaintiff's political beliefs. *See Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568. If defendant is able to demonstrate that he would have taken the same action regardless of the protected speech, plaintiff's

claim fails. In political discrimination cases, defendants bear the burden of persuading the fact finder that its reason is credible. *Padilla–Garcia*, 212 F.3d at 78. The evidence by which the plaintiff established his prima facie case may be enough to convince a fact finder that the proffered reason is pre-textual [9]. *Id.*

■ A review of the record reveals that plaintiff's ability for establishing it's *prima facie* case is at best questionable. Notwithstanding the Court need not bother with the intricacies of plaintiff's evidence (or lack thereof) as defendants have demonstrated by a preponderance of the evidence that they would have taken the same action notwithstanding the protected activity. Disbursement of funds can only occur when a written agreement containing conditions, limitations and safeguards is entered between the Trust and a Beneficiary Entity. That contract was never entered into. Under these circumstances defendant could not legally disburse the funding. Plaintiff's First Amendment Claim must be dismissed.

### 4. PLAINTIFF'S EQUAL PROTECTION CLAIM FAILS

Plaintiff's equal protection claim fails for the same reason sketched above. In *Tex-*

---

7. In doing so the Court also follows *McClintock v. Eichelberger*, 169 F.3d 812 (3rd Cir. 1999). In *McClintock* the Court of Appeals for the Third Circuit refused to extend First Amendment protection to an applicant for a government contract. The *McClintock* Court stated that "if expansion on the area [first amendment jurisprudence] is to come the source should be the Supreme Court". *Id.* at 817.

8. *Mt. Healthy's* burden shifting scheme has been applied in the political discrimination context. *See Padilla–Garcia*, 212 F.3d 69; *Rodriguez–Rios v. Cordero*, 138 F.3d 22, 24 (1st Cir.1998).

9. In this way, political discrimination suits offer a significantly more favorable standard to plaintiff than the ADEA or Title VII. In political discrimination cases "the plaintiff may discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor". *Padilla–Garcia*, 212 F.3d at 77. In Title VII cases plaintiff is required to come forward with affirmative evidence that the defendant's non-discriminatory reason is pretextual. *See Id.; Stephens v. Kerrigan*, 122 F.3d 171, 181 (3rd Cir.1997) (Explaining the difference between political discrimination and Title VII employment discrimination).

as v. Lesage, the Supreme Court of the United States indicated that the Mt. Healthy rule applies with equal vigor to equal protection claims. *Texas v. Lesage*, 528 U.S. 18, 20–21, 120 S.Ct. 467, 145 L.Ed.2d 347 (1999). As this Court has already ruled that defendants would have taken the same action notwithstanding the protected activity, plaintiff's equal protection claim must be dismissed. The Supreme Court's decision in *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) does not change this outcome.

### 5. PLAINTIFF'S DUE PROCESS CLAIM FAILS

 Plaintiff's third cause of action alleges that defendants deprived plaintiff of its property without due process of law. "Procedural due process does not apply every time someone is denied a right, privilege or benefit. Rather, in order to be entitled to procedural due process within the meaning of the Fourteenth Amendment, a person must have a protected life, liberty or property interest." *Lara v. Cowan*, 848 F.Supp. 1456 (D.Ariz.1994). When resolving procedural due process claims, Courts have traditionally engaged in a two steps analysis. The threshold issue is whether plaintiffs assert a property interest protected by the Constitution. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 574, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). When a protected issue is identified, the second step is to determine whether defendants deprived plaintiff of that interest without due process. *Loudermill*, 470 U.S. at 542–43, 105 S.Ct. 1487.

 Property interests subject to due process protection are not created by the Constitution but are created by "existing rules or understandings that stem from an independent source such as state law". *Roth*, 408 U.S. at 577, 92 S.Ct. 2701. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it". *Id.* In order to have a "legitimate claim of entitlement" a person's interest in a benefit must be supported by contractual or statutory language that might be invoked at a hearing. *Perry*, 408 U.S. at 601, 92 S.Ct. 2694.

Upon review of the record the Court concludes that plaintiff does not have a legitimate property interest on the monies that were allegedly due to it. As stated before, in order for an entity to become eligible for funding the internal regulations of the Trust demand that a service contract be entered into between the parties. No service contract was entered into between the Trust and PRISMA. As a consequence, PRISMA cannot be said to have a legitimate proprietary interest in the monies. All PRISMA has is a unilateral expectation for the money and an abstract desire for it.

 Even if this Court were to stretch the limits of due process protection and find that PRISMA has a proprietary interest in the money allegedly due to it, plaintiff's due process claim would still fail. Although plaintiff insists that the government violated its Fourteenth Amendment rights, plaintiff fails to identify exactly what process was due and not provided. Plaintiff's due process claim fails both the first and the second prong of the procedural due process test.

For all of the above stated reasons Defendants' motion to dismiss is hereby **GRANTED.** The case is dismissed as to all defendants named in the complaint. The Court has considered all of Plaintiff's

arguments and find them to be unpersuasive.

**IT IS SO ORDERED.**