**Ramón EMILIO COLÓN,
et. al., Plaintiffs,**

v.

**Ramón A. HERNÁNDEZ–TORRES,
Defendants.**

Civ. No. 01–1908(JAG).

United States District Court,
D. Puerto Rico.

Aug. 19, 2002.

Francisco R. Gonzalez–Colon, San Juan, PR, for plaintiffs.

Jorge Martinez–Luciano, Law Offices of Pedro Ortiz Alvarez, P.S.C, Ponce, PR, Rafael A. Robles–Diaz, Department of Justice Commonwealth of Puerto Rico, Grisselle Gonzalez–Negron, Faccio & Pabon Roca, San Juan, PR, for defendants.

### OPINION AND ORDER

GARCÍA–GREGORY, District Judge.

Before the Court is co-defendants'[1] *Motion For Partial Summary Judgment* (Docket No. 86) filed on July 8, 2002.[2] For

---

**1.** The moving co-defendants are Ramón A. Hernández–Torres, Noemí Martínez–García, and Marylin García–Torres, in their official capacities, as well as the Municipality of Juana Díaz.

**2.** Pursuant to Local Rule 311(5) plaintiffs had ten (10) days to oppose defendants' motion for summary judgment. They did so belatedly on August 14, 2002 (*see* Docket No. 100), due to some confusion on counsel's part prompted by another case pending before Judge Domínguez.

the reasons set forth below, the Court concludes that summary judgment is warranted, thus, **GRANTS** the motion.

## I. *Background*

On July 9, 2001 plaintiffs, employees of the Juana Díaz Head Start Program, filed the instant action before this Court pursuant to 42 U.S.C. § 1983 (Docket No. 1). In essence, plaintiffs allege that they are members of the New Progressive Party (PNP) while defendants are members of the Popular Democratic Party (PPD). Plaintiffs are employed at the Municipality's Head Start Program. Due to alleged acts of political discrimination, however, plaintiffs were denied employment opportunities, demoted and reassigned other functions. They allege violations of Due Process, the First Amendment and Equal Protection, as well as claim entitlement to punitive damages.

## II. *Summary Judgment*

Fed.R.Civ.P. 56(a) provides that: "[a] party seeking to recover upon a claim ... may ... move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted by him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992). *See also Boston Athletic Assn. v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989); *Medina Muñoz v. R.J. Reynolds Tobacco*, 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra*, § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorable to the nonmovant that the materiality hurdle is cleared." *Martínez v. Colón*, 54 F.3d 980, 983–984 (1st Cir. 1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, nor room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference,

the Court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines,* 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the non-moving party's case", *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994), the nonmovant has a "corresponding obligation to offer the Court more than steamy rhetoric and bare conclusions." *Lawton v. State Mutual Life Assurance Company of America,* 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must produce specific facts, in suitable evidentiary form' sufficient to limn a trial worthy issue.... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.see also Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina Muñoz,* 896 F.2d at 8, (quoting *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

Local rule 311(12), moreover, requires a party opposing summary judgment to file along with its motion "a separate, short, and concise statement of the material facts as to which it is contended that there is a genuine issue to be tried, properly supported by specific reference to the record." *See Morales v. A.C. Orssleff's EFTF,* 246 F.3d 32, 33–34 (1st Cir.2001). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the non-movant's case down the road toward an early dismissal." *Tavárez v. Champion Products, Inc.,* 903 F.Supp. 268, 270 (D.P.R.1995). In the present case, defendants have utterly failed to comply with Local Rule 311(12). Therefore, the following facts, set forth in plaintiffs' properly supported statement of material facts are deemed admitted for the purposes of this motion. *See, e.g., Nieves Ayala v. Johnson & Johnson, Inc.,* 208 F.Supp.2d 195, 197–198 (D.P.R.2002) (citing *Morales, supra* ).

### III. *Uncontested Facts*

1) On February 26, 1999 and pursuant to federal regulation, the Administration for Children and Families (ADFAN), approved a Personnel Manual, which regulates the recruitment, compensation, classification, recruitment, termination, reclassification and the fringe benefits of employees working for the Head Start Program in Puerto Rico. Section 1.2 of said regulation provides for the reclassification of employees whose original classification was erroneous.

2) On September 7, 2000, co-plaintiff Ada I. Rentas Bonilla was reclassified as a Teacher in the Juan Díaz Head Start Program through an addendum to her employment contract, which was originally signed for the position of Teacher Assistant.

3) On September 7, 2000, co-plaintiff Betsie Rodríguez–Colón was reclassified as a teacher in the Juana Díaz Head Start Program through an addendum to her employment contract, which was originally signed for the position of Teacher Assistant.

4) On September 7, 2000, co-plaintiff Marta E. Peña–Torres was reclassified as a Teacher in the Juana Díaz

Head Start Program through an addendum to her employment contract, which was originally signed for the position of Teacher Assistant.

5) On February 1, 1994, co-plaintiff Juan Malavé–Diez was appointed as Parent Involvement Coordinator in the Juana Díaz Head Start Program.

6) Co-plaintiff Julio García handled the reclassification of co-plaintiffs Ada Rentas and Betsie Rodríguez, thereby excluding co-defendant Marylin García (Personnel Officer) from the process.

7) According to the Head Start Personnel Manual, the Teacher position requires a B.A. in Pre–School Education, preferably C.D.A. credentials or courses directed towards obtaining it, or B.A. in Elementary Education.

8) According to the Head Start Personnel Manual, the Parent Involvement Coordinator position requires a B.A. in Psychology, Social Work or Education and 1 year experience in community work, specially with adults.

9) At the time when she was appointed as a Head Start Teacher, co-plaintiff Ada Rentas Bonilla did not comply with the educational requirements for said position, since she held a B.A. in Secondary Education, not Elementary or Pre–School Education as the position requires.

10) At the time when she was appointed as a Head Start Teacher, co-plaintiff Marta Peña, did not comply with the educational requirements for said position, since she did not possess a bachelor's degree.

11) At the time when she was appointed as a Head Start Teacher, co-plaintiff Betsie Rodríguez, did not comply with the educational requirements for said position, since she did not possess a bachelor's degree.

12) Head Start Director, Mario Moreno gave a leave for co-plaintiffs Rentas, Rodríguez and Peña to be hired as Head Start teachers, so long as they completed the academic requirements by 2003. Mr. Moreno gave this permission only because he was told that the program was having problems recruiting qualified teachers. Mr. Moreno was never told that there was a registry of eligible candidates for teaching positions, at the time of these appointments.

13) At the time when he was appointed as a Parent Involvement Coordinator, co-plaintiff Juan Malavé, did not comply with the educational requirements for said position, since he did not possess a bachelor's degree.

14) The interagency contract among the ADFAN and the Municipality of Juan Díaz, requires that the latter give strict compliance to the requirements set forth on the Personnel Manual.

15) Pursuant to its obligation to comply with Head Start Personnel Regulations, co-defendant Ramón Hernández, requested an auditing of all of the personnel files of the Juana Díaz Head Start Program staff, which was performed by personnel of ADFAN's Human Resources Department, which rendered a final report on May 2001.

16) A previous Human Resources audit had been performed by ADFAN in 1999, yet former Program Director Antonio Izquierdo failed to comply with the recommendations made pursuant thereto, for which these same deficiencies were found in the 2001 monitory.

17) All Head Start Employees were submitted to evaluation and the personnel from ADFAN never knew or took in consideration, said employees' political affiliation. The officers from ADFAN made recommendations as to all employees, whose appointments were found to be contrary to regulations.

18) Pursuant to ADFAN's recommendations, co-plaintiff Ada Rentas was reclassified as Teacher Assistant, while earning the same salary that she had as a teacher.

19) Pursuant to ADFAN's recommendations, co-plaintiff Betsie Rodríguez was reclassified as Teacher Assistant, while earning the same salary that she had as a teacher.

20) Pursuant to ADFAN's recommendations, co-plaintiff Marta Peña was reclassified as Teacher Assistant, while earning the same salary that she had as a teacher.

21) Pursuant to ADFAN's recommendations, co-plaintiff Juan Malavé was reclassified as Office Clerk, while earning the same salary that he had as a coordinator teacher.

22) Upon completion of the academic requirements, co-plaintiff Marta Peña, applied for a teaching position for which she was selected and which she holds to this day.

23) Pursuant to ADFAN's recommendations, Mrs. Ada López, whom plaintiffs themselves identify in the complaint as being affiliated to the PDP, was reclassified from her position as Parent Involvement Coordinator because she did not meet the academic requirements.

24) Pursuant to ADFAN's recommendations, Mr. Julio Rentas, whom plaintiffs themselves identify in the complaint as being affiliated to the PDP, was reclassified from his position as Parent Involvement Coordinator because he did not meet the academic requirements.

25) Pursuant to ADFAN's recommendations, Mrs. Carmen Santiago, a known PNP follower, was reclassified from her position as Kitchen Aid, to the higher echelon position of Officer Clerk.

26) The appointments of co-plaintiffs Rentas, Rodríguez and Peña, as Head Start Teachers, as well as the appointment of co-plaintiff Malavé as Parent Involvement Coordinator, should have not made it through the initial recruitment process, since their applications for these positions, should have been struck under Section 2.1(b)(1)(b) of the Personnel Manual.

27) At the time when co-plaintiffs Rentas, Rodríguez and Peña were appointed as teachers, there was a registry of eligible candidates who had applied for that position, with the Juana Díaz Head Start Program.

28) On June 29, 2001, ADFAN rendered a final report on their findings as to every employee on the Juana Díaz Head Start Program.

### IV. *Legal Analysis*

The uncontested facts of this case establish that plaintiffs Juan E. Malavé–Diez, Marta E. Peña–Torres, Ada I. Rentas–Bonilla and Betsie Rodríguez–Colón, at the time of the alleged discriminatory acts did not *qualify* for their positions at the Juana Díaz Head Start Program. In taking the personnel actions involving these plaintiffs, the defendants were thus complying with the requirements set by ADFAN in the Head Start Personnel Manual.

In the case at bar, plaintiffs have no reasonable expectation under state law of retaining employment based on an illegal appointment. *See Kauffman v. P.R.T.C.*, 841 F.2d 1169, 1173 (1st Cr.1988); *Arizmendi–Corales v. Rivera*, 176 F.Supp.2d 114, 119 (D.P.R.2001). Consequently, their due process claim fails. *Cf. Prisma Zona Exploration de Puerto Rico, Inc. v. Calderón*, 162 F.Supp.2d 1, 9 (D.P.R.2001) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)) (noting that property interests subject to due process protection are not created by the Constitution, but rather by state law). More so, in this case, the defendants would have taken the same personnel action, notwithstanding the plaintiffs' political affiliation.[3] Thus, plaintiffs' First Amendment and Equal Protection claims also fail. *See Prisma, supra* at 9 (citing *Mt. Healthy City School Dist. Bd. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)) (noting that such claims fail when defendants demonstrate by a preponderance of the evidence that they would have taken the same action, notwithstanding).

The Court must also dismiss plaintiffs' punitive damages claim against the municipality of Juana Díaz and defendants in their official capacity as such damages are clearly not available against such governmental entity. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), *Saldaña Sánchez v. López Gerena*, 256 F.3d 1, 4 (1st Cir.2001).

**WHEREFORE,** in light of the above, the Court hereby **GRANTS** defendants' motion for partial summary judgment (Docket No. 86) and **DISMISSES** the following claims of plaintiffs Juan E. Malavé–

Diez, Betsie Rodríguez–Colón, Marta E. Peña–Torres and Ada I. Rentas–Bonilla against the Municipality of Juana Díaz and defendants in their official capacity: (i) their Due Process, First Amendment and Equal Protection claims, and (ii) their claims for punitive damages.

**The Clerk of Court shall enter partial judgment accordingly.**

**SO ORDERED.**

---

**3.** In this case defendants have carried their burden of establishing that they would have taken the same action based on the facts stated in their 311(12) statement. More so, defendants have taken the same action, not only in regards to NPP employees, but PDP employees as well.